**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |  |  |
|---|---|---|---|
| JUANITA LAWSON, | : | | |
| | : | | |
| Plaintiff, | : | Civil Action | |
| | : | No. _____ | |
| | : | | |
| v. | : | | |
| | : | **PLAINTIFF DEMANDS A** | |
| | : | **JURY TRIAL** | |
| ALBERT EINSTEIN MEDICAL CENTER; | : | | |
| ALBERT EINSTEIN MEDICAL CENTER | : | | |
| d/b/a JEFFERSON HEALTH – JEFFERSON | : | | |
| EINSTEIN PHILADELPHIA HOSPITAL; | : | | |
| EINSTEIN MEDICAL CENTER | : | | |
| MONTGOMERY; and FARRELL (LAST | : | | |
| NAME UNKNOWN), | : | | |
| | : | | |
| Defendants. | : | | |
| | : | | |

**COMPLAINT**

Plaintiff, Juanita Lawson, as for her Complaint against the above Defendants respectfully states upon information and belief as follows:

**NATURE OF THE ACTION**

1. This action arises out of the unlawful discrimination of Plaintiff by Defendants due to Plaintiff's disability and retaliation by Defendants for Plaintiff's engagement in protected activity.

2. Plaintiff, Juanita Lawson, brings this action charging that Defendants violated Plaintiff's rights pursuant to the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 et. seq. ("ADA"), the Pennsylvania Human Relations Act, as amended, 43 P.S. §§ 951, et. seq.

("PHRA"), and the Supreme Court of Pennsylvania's decision in *Shick v. Shirey*, 552 Pa. 590, 716 A.2d 1231 (1998).

3. Plaintiff seeks damages to redress the injuries she has suffered as a result of Defendants' actions.

## **PARTIES**

4. Defendant Albert Einstein Medical Center is a domestic nonprofit corporation.

5. At all times material, Defendant Albert Einstein Medical Center was doing business as Jefferson Health – Jefferson Einstein Philadelphia Hospital.

6. Defendant Albert Einstein Medical Center and Defendant Albert Einstein Medical Center d/b/a Jefferson Health – Jefferson Einstein Philadelphia Hospital are hereinafter collectively referred to as "Defendant AEMC."

7. Defendant Einstein Medical Center Montgomery (hereinafter "Defendant EMCM") is a domestic nonprofit corporation.

8. At all times material, Defendants AEMC and EMCM's primary places of business were located at 5501 Old York Road, Philadelphia, PA 19141.

9. Defendants AEMC and EMCM are hereinafter collectively referred to as Corporate Defendants.

10. At all relevant times, Corporate Defendants were, and are currently, doing business in the Commonwealth of Pennsylvania and, at all times relevant, continuously employed at least fifteen (15) individuals.

11. At all relevant times, Corporate Defendants were employers engaged in an industry affecting commerce within the meaning of the Americans with Disabilities Act, 42 U.S.C. §12111, *et seq.*

12. At all times material, Defendant Jeffrey Farrell (hereinafter referred to as "Defendant Farrell") was a Supervisor with Corporate Defendants.

13. At all times material, Defendant Farrell held a supervisory position over Claimant.

14. At all times materials, Corporate Defendants and Defendant Farrell were joint employers of Claimant.

15. At all times material, Defendants jointly employed Plaintiff.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

16. On October 8, 2024, Plaintiff timely filed a charge of disability discrimination, hostile work environment, and retaliation with the U.S. Equal Employment Opportunity Commission ("EEOC"), the Pennsylvania Human Relations Commission ("PHRC"), and the Philadelphia Commission on Human Relations ("PCHR") alleging violations of the ADA and the PHRA.

17. Plaintiff's PHRA claims are ripe and properly before this Court because more than one year has elapsed since the PHRC assumed jurisdiction over Plaintiff's Charge of Discrimination, and the PHRC has neither resolved the matter nor entered into a conciliation agreement, thereby permitting Plaintiff to proceed in court.

18. Plaintiff's common-law wrongful discharge claims pursuant to *Shick*, are likewise ripe as they are not subject to administrative exhaustion requirements.

19. On February 2, 2026, the EEOC issued Plaintiff a "Notice of Right to Sue" letter.

20. This action is being commenced within ninety (90) days of Plaintiff receiving her "Notice of Right to Sue" letter from the EEOC.

21. Plaintiff has complied with all administrative prerequisites to bring this lawsuit.

3

## JURISDICTION AND VENUE

22. Once Plaintiff has asserted her ADA claims against the parties this Court will has subject matter jurisdiction over this case pursuant to 28 U.S.C. §1331, which gives district court jurisdiction over all civil actions arising under the Constitution, laws, and treaties of the United States.

23. This Court has jurisdiction over this lawsuit pursuant to 28 U.S.C. § 1331 because it involves questions under federal law under the ADA.

24. This Court has supplemental jurisdiction under 28 U.S.C. §1367.

25. This Court also has subject matter jurisdiction pursuant to 28 U.S.C. § 1343, which gives district courts original jurisdiction over (a) any civil action authorized by law to be brought by any person to redress the deprivation, under color of any State Law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States; and (b) any civil action to recover damages or to secure equitable relief under any Act of Congress providing for the protection of the civil rights.

26. Venue in this judicial district is proper pursuant to 28 U.S.C. § 1391(b) and 42 U.S.C. § 2000e-5(f)(3) because a substantial part of the acts or omissions giving rise to Plaintiff's claims occurred in Philadelphia, Pennsylvania within the Eastern District of Pennsylvania, and Defendants are subjected to personal jurisdiction here.

## MATERIAL FACTS

27. Plaintiff was hired by Defendants around June 5, 2023.

28. Plaintiff was employed by Defendants as a Patient Care Technician.

29. Around January 29, 2024, Plaintiff was injured at work while in the course of performing her job duties.

30. The day Plaintiff was injured, she notified her supervisor who wrote a report.

31. Also, the day Plaintiff was injured, she was seen and treated Corporate Defendants' Emergency Department.

32. Plaintiff's injury substantially limited her ability to perform the major life functions of eating, sleeping, and lifting.

33. In the alternative, Plaintiff claims that Defendants perceived her as being disabled.

34. After receiving treatment in Respondent's Emergency Department and prior to returning to work, Plaintiff was seen by Dr. Eric Solmon for follow-up care.

35. At Plaintiff's follow up appointment with Dr. Eric Solomon, he prescribed her muscle relaxant medication.

36. Around February 6, 2024, Plaintiff returned to work.

37. As Plaintiff was unable to perform the functions of Patient Care Technician, she was placed on light duty which was limited to Plaintiff performing clerical work on a computer.

38. For her first shift back after her injury, Plaintiff was scheduled for the 7 PM (February 6, 2024) to 7 AM (February 7, 2024) shift.

39. During the shift she was trained on how to perform her light duty work.

40. Earlier that day, Plaintiff had taken her prescribed muscle relaxer, and as a result, Plaintiff felt drowsy and requested to take a short break.

41. While on the break, Plaintiff dozed off.

42. After Plaintiff's shift ended, on February 7, 2024, Plaintiff received a call from Defendant Farrell who informed Plaintiff that she was not to come back to work and that Corporate Defendants' Human Resources Department would call her.

43. Thereafter, around February 19, 2024, Plaintiff received a call from Defendant Farrell who informed Plaintiff that Defendants were going to "go their separate ways," and that Plaintiff was terminated.

44. At no time after Plaintiff's return to work and prior to her termination did Defendants engage, or attempt to engage, in an interactive discussion with Plaintiff regarding Plaintiff's disability, nor did they speak with her about reasonable workplace accommodations that Defendants could offer Plaintiff.

45. Plaintiff claims that Defendants discriminated against and terminated her because of her disability and/or because Defendants perceived Plaintiff as being disabled.

46. Plaintiff claims actual discharge and seeks reinstatement.

47. Plaintiff claims a continuous practice of discrimination and claims continuing violations and makes all claims herein under the continuing violations doctrine.

48. As a result of Defendants' actions, Plaintiff felt extremely humiliated, degraded, victimized, embarrassed and emotionally distressed.

49. Plaintiff has further experienced severe emotional and physical distress.

50. Plaintiff further claims aggravation, activation and/or exacerbation of any preexisting condition.

51. As a result of the acts and conduct complained of herein, Plaintiff has suffered and will continue to suffer the loss of income, the loss of salary, bonuses, benefits and other

compensation which such employment entails, and Plaintiff also suffered future pecuniary

losses, emotional pain, humiliation, suffering, inconvenience, loss of enjoyment of life, and

other non-pecuniary losses.

52. As Defendants' conduct has been malicious, willful, outrageous, and conducted with full

knowledge of the law, Plaintiff demands Punitive Damages as against Defendants.

53. Plaintiff claims alternatively that Plaintiff is an Independent Contractor, and Plaintiff makes

all applicable claims for the above conduct and facts under the applicable law pertaining to

Independent Contractors. Furthermore, in such case, Plaintiff claims that Defendants owed

and breached their duty to Plaintiff to prevent the discrimination and retaliation and are liable

therefore for negligence.

## COUNT I
### DISCRIMINATION
### UNDER THE AMERICANS WITH DISABILITIES ACT

54. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this

Complaint.

55. Plaintiff claims Defendants violated the Americans with Disabilities Act of 1990 (Pub. L.

101-336) (ADA), as amended, as these titles appear in volume 42 of the United States Code,

beginning at section 12101.

56. Title 42 of the Americans with Disabilities Act of 1990, Chapter 126, Subchapter I, Section

12112, Discrimination [Section 102] states: "(a) General rule. - No covered entity shall

discriminate against a qualified individual on the basis of disability in regard to job

application procedures, the hiring, advancement, or discharge of employees, employee

compensation, job training, and other terms, conditions, and privileges of employment."

57. Defendants engaged in an unlawful discriminatory practice by discriminating against the Plaintiff because of her disability – namely that she was terminated because she was disabled.

58. As a result of the Defendants' violations of the ADA, Plaintiff has suffered damages including but not limited to: past and future lost wages, pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, humiliation, emotional distress, reputational harm, diminishment of career opportunities, and other harm, both tangible and intangible.

## COUNT II
## FAILURE TO ACCOMMODATE
## UNDER THE AMERICANS WITH DISABILITIES ACT

59. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint.

60. Plaintiff claims Defendants violated the Americans with Disabilities Act of 1990 (Pub. L. 101-336) (ADA), as amended, as these titles appear in volume 42 of the United States Code, beginning at section 12101.

61. Title 42 of the Americans with Disabilities Act of 1990, Chapter 126, Subchapter I, Section 12112, Discrimination [Section 102] states: "(a) General rule. - No covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."

62. Defendants engaged in an unlawful discriminatory practice by failing to accommodate Plaintiff's disability.

63. As a result of the Defendants' violations of the ADA, Plaintiff has suffered damages including but not limited to: past and future lost wages, pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, humiliation, emotional distress, reputational harm, diminishment of career opportunities, and other harm, both tangible and intangible.

## COUNT III
## RETALIATION
## UNDER THE AMERICANS WITH DISABILITIES ACT

64. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint.

65. SEC. 12203. [Section 503] states, "(a) Retaliation. - No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter."

66. "Opposed" includes asserting ADA-protected rights, not just formal complaints.

67. Plaintiff's use of leave, and reassignment to a light duty position, as reasonable accommodations for her disability are forms of opposition to disability discrimination, because they are an assertion of a statutory right created by the ADA.

68. Defendants engaged in an unlawful retaliation by discharging Plaintiff because of Plaintiff's engagement in the protected employment practices of using a reasonable accommodation for her disability.

69. As a result of the Defendants' violations of the ADA, Plaintiff has suffered damages including but not limited to: past and future lost wages, pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, humiliation, emotional distress, reputational harm, diminishment of career opportunities, and other harm, both tangible and intangible.

9

## COUNT IV
## RETALIATION
## VIOLATION OF PUBLIC POLICY - *SHICK v. SHIREY, 552 Pa. 590 (1998)*

70. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint.

71. Under the Pennsylvania Supreme Court decision in *Shick v. Shirey*, 552 Pa. 590 (1998), it is a violation of public policy and thus an exception to the at-will employment status for an employer and/or individual to retaliate against an employee for having exercised his or her rights under the Workers' Compensation Act.

72. Plaintiff suffered an injury at work that caused her to miss work. Plaintiff placed Defendants on notice of her work-related injury and need for medical assistance.

73. Defendants retaliated against Plaintiff by terminating Plaintiff and interfering with Plaintiff's attempts to seek relief under the Workers Compensation Act. The temporal proximity of Plaintiff's protected activity (seeking medical relief for a work-related injury) to Plaintiff's termination and interference with Plaintiff's rights under the Workers Compensation Act, is of an unusually suggestive temporal proximity to raise an inference of retaliation and/or evidence exists of a causal relation between the protected activity and retaliation/removal and reduction in schedule.

74. As a direct and proximate result of Defendants' retaliation, Plaintiff has damages and harms including but not limited to: past and future lost wages, pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, humiliation, emotional distress, reputational harm, diminishment of career opportunities, and other harm, both tangible and intangible.

## COUNT V
## DISCRIMINATION
## UNDER THE PENNSYLVANIA HUMAN RELATIONS ACT

75. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint.

76. The PHRA § 955 provides that it shall be an unlawful discriminatory practice:

"(a) For any employer because of the race, color, religious creed, ancestry, age, sex, national origin or non-job related handicap or disability or the use of a guide or support animal because of the blindness, deafness or physical handicap of any individual or independent contractor, to refuse to hire or employ or contract with, or to bar or to discharge from employment such individual or independent contractor, or to otherwise discriminate against such individual or independent contractor with respect to compensation, hire, tenure, terms, conditions or privileges of employment or contract, if the individual or independent contractor is the best able and most competent to perform the services required."

77. Defendants engaged in an unlawful discriminatory practice by discriminating against Plaintiff because of her disability.

78. As a result of the Defendants' violations of the PHRA, Plaintiff has suffered damages including but not limited to: past and future lost wages, pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, humiliation, emotional distress, reputational harm, diminishment of career opportunities, and other harm, both tangible and intangible.

11

### COUNT VI
### RETALIATION
### UNDER THE PENNSYLVANIA HUMAN RELATIONS ACT

79. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint.

80. The PHRA § 955(d) provides that it shall be unlawful discriminatory practice: "For any person, employer employment agency or labor organization to discriminate in any manner against any individual because such individual has opposed any practice forbidden by this act, or because such individual has made a charge, testified or assisted, in any manner, in any investigation, proceeding or hearing under this act."

81. "Opposed" includes asserting ADA-protected rights, not just formal complaints.

82. Plaintiff's use of leave, and reassignment to a light duty position, as reasonable accommodations for her disability are forms of opposition to disability discrimination, because they are an assertion of a statutory right created by the ADA.

83. Defendants engaged in an unlawful retaliation by discharging Plaintiff because of Plaintiff's engagement in the protected employment practices of using a reasonable accommodation for her disability.

84. As a result of the Defendants' violations of the PHRA, Plaintiff has suffered damages including but not limited to: past and future lost wages, pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, humiliation, emotional distress, reputational harm, diminishment of career opportunities, and other harm, both tangible and intangible.

## COUNT VII
## AIDING AND ABETTING
## UNDER THE PENNSYLVANIA HUMAN RELATIONS ACT

85. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint.

86. The PHRA § 955(e) provides that it shall be unlawful discriminatory practice: "For any person, employer, employment agency, labor organization or employee, to aid, abet, incite, compel or coerce the doing of any act declared by this section to be an unlawful discriminatory practice, or to obstruct any person from complying with the provisions of this act or any order issued thereunder, or to attempt, directly or indirectly, to commit any act declared by this section to be an unlawful discriminatory practice."

87. Defendants engaged in unlawful discriminatory practice in violation of PHRA § 95€ by aiding, abetting, inciting, compelling, and coercing the discriminatory conduct.

88. As a result of the Defendants' violations of the PHRA, Plaintiff has suffered damages including but not limited to: past and future lost wages, pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, humiliation, emotional distress, reputational harm, diminishment of career opportunities, and other harm, both tangible and intangible.

## JURY DEMAND

Plaintiff requests a jury trial on all issues to be tried.

## DEMAND TO PRESERVE EVIDENCE

The Defendants are hereby demanded to preserve all physical and electronic information pertaining in any way to Plaintiff's employment, to her potential claims, her claims to damages, to any defenses to same, including, but not limited to electronic data storage, employment files,

files, memos, job descriptions, text messages, e-mails, spreadsheets, images, cache memory, payroll records, paystubs, time records, timesheets, and any other information and/or data which may be relevant to any claim or defense in this litigation.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff demands judgment against Defendants, jointly and severally, in an amount to be determined at the time of trial plus interest, including but not limited to all emotional distress and back pay and front pay, punitive damages, liquidated damages, statutory damages, attorneys' fees, costs, and disbursements of action; and for such other relief as the Court deems just and proper.

Respectfully Submitted,

**DEREK SMITH LAW GROUP, PLLC**
*Attorneys for Plaintiff Juanita Lawson*

/s/ Catherine W. Lowry  Esq.
Catherine W. Lowry, Esq.
1628 Pine Street
Philadelphia, Pennsylvania 19103
(267) 857-0832

Dated: February 5, 2026